UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GARY STEVEN LOESCH,

Petitioner,

vs.

TERRI GONZALES,

Respondent.

No. 2:12-cv-1103-EFB P

ORDER

Petitioner Gary Steven Loesch is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] Petitioner challenges a judgment of conviction entered against him on February 4, 2010 in the Sacramento County Superior Court on the charge of assault with a deadly weapon, with a finding that he suffered a prior Oregon conviction that qualified as a prior "strike" conviction within the meaning of California's three strikes law. He seeks federal habeas relief on the grounds that his trial counsel rendered ineffective assistance by failing to: (1) remember that the prosecutor intended to impeach him with prior convictions if he chose to testify; (2) oppose in limine motions regarding impeachment of the prosecution's witnesses; (3) request a jury instruction on defense of property; (4) change

[1] This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1) and is before the undersigned pursuant to the parties' consent (ECF Nos. 6, 11). E.D. Cal. Local Rules, Appx. A, at (k).

the trial court's ruling regarding admission of a 9-1-1 recording as a spontaneous statement; and (5) object to the trial court's consideration of a statement petitioner made at a probation hearing to determine that the prior conviction qualified as a strike under California law. Upon careful consideration of the record and the applicable law, the undersigned denies petitioner's application for habeas corpus relief.

**I. Background**

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> Defendant got into an argument with a roommate and their disagreement moved from their apartment to the parking lot. As the argument became more physical, defendant got into his truck, put it in gear, revved the engine and drove toward his roommate and some others. Defendant pinned the victim between his truck and another vehicle, lifting the victim off the ground. The victim was released only when defendant put the truck into reverse, backed out, and sped out from the parking lot.
>
> Defendant was charged with assault with a deadly weapon. He raised claims of accident, self-defense, and necessity, asserting that he hit the victim unintentionally as he tried to escape being attacked. An automotive services director testified that defendant's truck was in poor shape and leaked power steering fluid, making it difficult to steer when fluid ran low. The witness testified that he did not know the condition of defendant's truck on the date of the accident.

*People v. Loesch*, No. C064587, 2011 Cal. App. Unpub. LEXIS 6755, at *2 (Cal. App. 3d Dist. Sept. 7, 2011); Resp't's Lodg. Doc. 4.

After the California Court of Appeal affirmed petitioner's judgment of conviction, petitioner filed a petition for writ of habeas corpus in the Superior Court of California, County of Sacramento. Resp't's Lodg. Doc. 5. That petition included the claims that trial counsel rendered ineffective assistance by failing to: (1) remember that the prosecutor intended to impeach petitioner with prior convictions if he chose to testify; (2) oppose in limine motions regarding impeachment of the prosecution's witnesses; and (3) request a jury instruction on defense of property. *Id.* The Superior Court denied that petition in a reasoned decision. Resp't's Lodg.

Doc. 6. Petitioner then raised the same claims in a petition for writ of habeas corpus in the California Court of Appeal, Third Appellate District, which was summarily denied. Resp't's Lodg. Docs. 7, 8. Petitioner again raised these claims in a petition for writ of habeas corpus in the California Supreme Court, which was also summarily denied. Resp't's Lodg. Docs. 9, 10.

On April 25, 2012, petitioner filed a petition for a writ of habeas corpus in this court, upon which this action proceeds.[2] ECF No. 1; *see also* ECF No. 28 at 1 (Jan. 15, 2014 Order noting that this case "stands submitted for decision on the claims in petitioner's April 25, 2012 petition").[3]

**II. Standards of Review Applicable to Habeas Corpus Claims**

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. *See Wilson v. Corcoran*, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

---

[2] On September 16, 2013, over a year after respondent had answered the original petition, petitioner purported to file a "first amended petition." That amendment was filed without leave of court and without an accompanying motion to amend articulating the bases for his proposed amendments. ECF No. 27. Accordingly, it was not authorized by the Federal Rules of Civil Procedure (*see* Rule 15 (a)) and petitioner was not permitted to proceed on it. *See* ECF No. 28. Nevertheless, the court notes that ultimately, the claims raised therein lack merit.

[3] According the California Courts' website, petitioner filed a second petition for writ of habeas corpus in the California Supreme Court on March 11, 2013. The petition was summarily denied on May 1, 2013, with citations to *In re Waltreus* (1965) 62 Cal.2d 218, 225 and *In re Miller* (1941) 17 Cal.2d 734, 735. *See* ECF No. 27 at 20.

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, ___ U.S. ___, 132 S.Ct. 38 (2011); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (citing *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct." *Id.* Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[4] *Lockyer v.*

---

[4] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)).

*Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 412. *See also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S.___,___,131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication

or state-law procedural principles to the contrary." *Richter*, 131 S. Ct. at 784-85. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, ___ U.S. ___, ___, 133 S. Ct. 1088, 1091 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. *Stancle v. Clay*, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784. This court "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 786. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Richter*, 131 S. Ct. at 784).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462

F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

**III. Standards Applicable to Ineffective Assistance of Counsel Claims**

The clearly established federal law for ineffective assistance of counsel claims is *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on a *Strickland* claim, a defendant must show that (1) his counsel's performance was deficient and that (2) the "deficient performance prejudiced the defense." *Id.* at 687. Counsel is constitutionally deficient if his or her representation "fell below an objective standard of reasonableness" such that it was outside "the range of competence demanded of attorneys in criminal cases." *Id.* at 687–88 (internal quotation marks omitted). "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Richter*, 131 S.Ct. at 787-88 (quoting *Strickland*, 466 U.S. at 687). Further, reviewing courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Strickland*, 466 U.S. at 689.

Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S.Ct. at 792.

**IV. Analysis of Petitioner's Ineffective Assistance of Counsel Claims**

**A. Failure to Remember That Prosecutor Intended to Impeach Petitioner**

Petitioner contends that trial counsel provided ineffective assistance by forgetting that the prosecutor intended to impeach him with prior convictions if he chose to testify. ECF No. 1 at 16-17.[5] Petitioner explains that on December 21, 2009, the prosecution filed a motion seeking to impeach him with his prior convictions for crimes involving moral turpitude. *Id.* at 16, 31 (Ex. A). Petitioner's trial counsel subsequently filed a motion in limine stating, "The prosecution has not indicated whether it desires to impeach defendant using any alleged prior convictions, charges

[5] For ease of reference, all references to page numbers in the petition are to those assigned via the court's electronic filing system.

or conduct." *Id.* at 17, 36 (Ex. B). Based upon trial counsel's apparent oversight in this regard, petitioner concludes that his counsel "didn't test the adversary's case." *Id.* at 17.

The Superior Court of California, County of Sacramento, the last court to issue a reasoned decision addressing the matter, rejected this claim on the merits as follows:

> The People's trial brief, filed on December 21, 2009, stated that the People would seek to impeach Petitioner with three convictions for crimes of moral turpitude if he testified. Defense counsel's motions in limine, filed on January 25, 2010, stated that the prosecution had not indicated whether it intended to impeach Petitioner with any prior convictions. Nonetheless, counsel's motion requested a hearing to exclude mention of Petitioner's prior convictions. Such a hearing was held on February 1, 2010 and Petitioner thereafter testified. Although counsel may have erred as to the prosecutor's prior identification of impeachable prior convictions, Petitioner has not shown that the error resulted in any prejudice. Counsel sought to exclude the prior convictions and a hearing was held. Therefore, there is no likelihood of a different result.

Resp't's Lodg. Doc. 6 at 2.

The Superior Court's decision is not an unreasonable application of clearly established Supreme Court precedent. That is, petitioner has not shown that but for the oversight in trial counsel's motion is limine, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Although trial counsel's motion in limine incorrectly stated that the prosecution had not indicated whether it desired to impeach petitioner with prior convictions, trial counsel requested a hearing on the matter and sought to exclude the prior convictions on three different grounds, including remoteness, improper propensity evidence, and the burden that admission of such convictions would place on petitioner's decision to testify at trial. Reporter's Transcript on Appeal (RT) at 6-9. Petitioner does not suggest that trial counsel should have made additional or different arguments related to exclusion of his prior convictions. Because the Superior Court reasonably concluded that petitioner was not prejudiced by the misstatement in trial counsel's motion in limine, petitioner is not entitled to federal habeas relief on this claim.

**B. Failure to Oppose in Limine Motions**

Petitioner contends that trial counsel provided ineffective assistance by failing to oppose the People's in limine motion seeking to prevent impeachment of their witnesses. ECF No. 1 at 17-18. Petitioner argues that trial counsel should have sought to impeach Donna Marie Beck with

a 2004 misdemeanor conviction for welfare fraud and Terrance Smith with a 2006 juvenile adjudication for residential burglary. *Id.* Petitioner argues that the "probative value of a witnesses credibility is enormous when trying to ascertain the truth of a matter," and that by failing to impeach these witnesses with their prior convictions, trial counsel acted as a "surrogate prosecutor." *Id.*

The Superior Court of California, County of Sacramento, the last court to issue a reasoned decision addressing the matter, rejected this claim as follows:

> Next, Petitioner argues that counsel should have opposed the People's request to exclude prior convictions involving moral turpitude of witnesses Donna Marie Beck (misdemeanor conviction for welfare fraud) and Terrance Smith (juvenile adjudication for first-degree burglary). Petitioner has not attached any evidence to support this claim. Although a minute order states that in limine motions were discussed on January 25, 2010, it does not indicate what rulings were made, if any. Nor does it indicate whether counsel objected to the motions. Therefore, Petitioner has failed to show that counsel's conduct was unreasonable.

Resp't's Lodg. Doc. 6 at 3. However, petitioner belatedly included copies of the relevant transcripts when filing petitions in the California Court of Appeal, Third Appellate District, and the California Supreme Court. Resp't's Lodg. Doc. 7 at Y1-Y3; Resp't's Lodg. Doc. 9 at Y1-Y3. Therefore, the California Court of Appeal and California Supreme Court did not reject this claim for the same reasons as the Superior Court. Because there is no reasoned decision from the state court for this court to look to, petitioner must demonstrate "there was no reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784. As discussed below, the state court's summary denial is not an unreasonable application of clearly established Supreme Court precedent, as petitioner has not shown that trial counsel performed deficiently by failing to oppose the People's in limine motion seeking to prevent impeachment of their witnesses or that he suffered prejudice as a result.

**1. <u>Terrance Smith's Juvenile Adjudication</u>**

On January 25, 2010, the People filed a motion in limine seeking to exclude:

> any reference to victim Terrance Smith's 2006 juvenile adjudication for first degree burglary pursuant to Evidence Code section 352 (undue consumption of time, jury confusion). As a juvenile adjudication the incident is not a conviction

> itself for the purposes of impeachment, and would necessarily require additional on the subject testimony should the victim deny it. Moreover, the adjudication is minimally probative since the present case has no allegations that the victim prompted the defendant to act due to some kind of theft. Should the victim deny the existence of the adjudication it would be the responsibility of the defense to offer witnesses to prove the conduct, resulting in a trial within a trial. As such, the People request that any evidence concerning this adjudication, or any other arrests, be excluded.

Clerk's Transcript on Appeal (CT) 45.

The trial court heard argument from the parties as follows:

> THE COURT: The final [motions in limine] refer to a Donna Marie Beck's 2004 conviction for a misdemeanor welfare fraud, and then Terrance Smith's 2006 juvenile adjudication for a first degree burglary. [¶] I'll take up the Terrance Smith item first because he's the victim, correct? [¶] And he's the one that testified at the prelim in a fashion which, as it was described to me, is somewhat favorable to the defense.
>
> [PROSECUTOR]: Yes.
>
> [DEFENSE COUNSEL]: I really don't have an objection to that.
>
> THE COURT: Excluding it?
>
> [DEFENSE COUNSEL]: Yeah.
>
> THE COURT: And that was why I was asking. [¶] I will simply grant it without objection.
>
> [DEFENSE COUNSEL]: Thank you.

RT 21.

Terrance Smith subsequently testified at trial in a manner favorable to petitioner. *See* RT 63-64, 77 (testifying that petitioner was a good friend with whom he could discuss his problems). Smith testified that on the day of the offense, petitioner entered his truck and attempted to drive away. RT 71. However, Randy Dickinson, a witness involved in an argument with petitioner, tried to prevent petitioner from leaving. RT 71-73. Smith also testified that Dickinson followed petitioner and hit the hood of petitioner's truck with a steel pole or lead pipe. RT 72-73, 75, 93-94. Smith's testimony supported petitioner's claim that he got into his truck in an attempt to get away to avoid Dickinson. RT 394-95, 402.

Smith also testified that petitioner hit him with the truck by accident. RT 77. He added that petitioner's truck was very difficult to steer, almost as if it did not have power steering. RT 98-99. Smith even stated that of the twenty to forty vehicles he had driven, petitioner's ranked in the top five in terms of being difficult to drive. RT 99-100. This testimony corroborated petitioner's claim that hitting Smith was an accident, caused in part, by the truck's mechanical failures. *See* RT 341-356.

Given that Smith was a friendly witness who testified favorably for the defense, the California Supreme Court may have determined that petitioner would have gained nothing from impeaching Smith. The Court may have further concluded that the outcome of the proceedings would not have been different had trial counsel impeached Smith with a four-year old juvenile adjudication. Thus, petitioner has not established that there was no reasonable basis for the state court to deny relief. Petitioner is not entitled to federal habeas relief as to this claim.

**2. <u>Donna Marie Beck's Misdemeanor Conviction</u>**

On January 25, 2010, the People filed motions in limine seeking to exclude:

> any reference to witness Donna Marie Beck's 2004 conviction for misdemeanor welfare fraud pursuant to Evidence Code section 352. The conviction itself is a five year old misdemeanor . . . . The conviction is remote in time without being necessarily probative, and should be excluded.

CT 45-46.

The trial court heard argument from the parties as follows:

> THE COURT: And then finally, a motion to exclude Donna Marie Beck's 2004 conviction for misdemeanor welfare fraud. [¶] Do you have any intention of bringing up that issue?
>
> [DEFENSE COUNSEL]: I would like to keep it out there just in case. I don't have any intention at this point, but - -
>
> THE COURT: I'll tell you what. I will reserve ruling on it. If you decide that you want to ask it for some reason, simply approach, and I'll rule on it at that time, okay?
>
> [DEFENSE COUNSEL]: Thank you.
>
> THE COURT: But at the moment it's excluded absent my permission to ask it.

[DEFENSE COUNSEL]: Thank you.

RT 21-22.

In his opening statement, trial counsel asked the jury to pay attention to how the prosecution witnesses changed their stories over time. RT 49-50. Trial counsel made an example out of Beck in this regard, noting during his questioning of her that she had waited until three days before testifying to claim that petitioner was armed with a chain on the day of the assault. RT 186-187, 197-199.

In addition to highlighting Beck's evolving account of the assault, trial counsel pointed to facts suggesting that Beck was a biased witness. At trial, Beck testified that Terrance Smith, the victim, was her son and that she had discussed the facts of the case with him. RT 155, 183. Beck also testified that she had been dating Frank Nichols (a witness and petitioner's roommate) for nearly sixteen years, and that Randy Dickinson was Nichols's cousin. RT 157, 182. In his closing argument, trial counsel argued that Nichols, Smith, Beck, and Dickinson "are all family essentially. [Petitioner] is the outsider. They are all trying to insulate themselves from criminal responsibilities. Also, it's closely tied with the motive to lie." RT 497.

Trial counsel also capitalized on Beck's testimony that she did not know where Randy Dickinson was at the time petitioner moved his truck. RT 190-191. In his closing, he argued that her denial in this regard was just an effort to deflect blame:

> I don't know where Randy was when the truck moved forward? I didn't see Randy. Really? Really? You missed Randy swinging the stick with all his might against the truck? How do you miss that?

RT 499-500.

In essence, trial counsel challenged Beck's credibility by showing how her account of the assault had changed over time, and suggesting that she was biased and had a motive to lie. Given trial counsel's broad attack on Beck's credibility, the California Supreme Court may have concluded that the results of the proceeding would not have been any different if trial counsel had further impeached Beck with her prior misdemeanor conviction. Thus, petitioner has not established that there was no reasonable basis for the state court to deny relief. Petitioner is not entitled to federal habeas relief as to this claim.

**C. Failure to Request Jury Instruction on Defense of Property**

Petitioner contends that trial counsel provided ineffective assistance by declining to request a jury instruction on defense of property. ECF No. 1 at 18. The Superior Court of California, County of Sacramento, the last court to issue a reasoned decision addressing the matter, rejected this claim on the merits as follows:

> Finally, counsel declined to request that the trial court instruct the jury with CALCRIM No. 3476, which states that a person may use reasonable force to protect property from imminent harm. According to the exhibits, the prosecutor suggested that the trial court give the instruction. The court stated that absent a defense request, it would not give the instruction; the instruction was not given. Petitioner has not shown that the requested instruction was appropriate as there was no evidence that Petitioner was protecting his property from damage. Consequently, counsel's conduct was neither unreasonable nor prejudicial to Petitioner's case.

Resp't's Lodg. Doc. 6 at 3. As discussed below, the Superior Court's decision is not an unreasonable application of clearly established Supreme Court precedent.

At trial, petitioner presented the related defenses of self-defense, accident, and necessity. RT 485-95. Trial counsel did not argue defense of property and petitioner never suggested that his actions were motivated by a desire to protect his truck. Rather, petitioner repeatedly stated that his intent was to prevent personal injury. *See, e.g.*, RT 402 (stating that he was "[j]ust trying to get away"); RT 440 (stating that he was "[t]rying to get out of there before something happened to me"). Petitioner discussed his weak health condition, noting that he had open heart surgery seventeen months before the incident and had not fully recovered from a prior back surgery. RT 396-97. He claimed that Dickinson had dragged him into a dresser and thrown him against a door. RT 376, 420-21. He stated that after getting away, he entered his truck and fumbled for his keys while Dickinson, Frank Nichols, and Smith were all outside shouting at him.  RT 379-80, 385, 426. Petitioner stated that Dickinson had his aggressive pit bull dog with him,  Nichols had a stick, and Smith had a pipe. RT 361, 372, 379-80, 425-426. Dickinson hit the  hood of petitioner's truck, the driver's side mirror, and the driver's side door. RT 388-92, 399-400. Petitioner added that Nichols also hit his truck, but that that he was not "too concerned" with him "because he was on the passenger side." RT 395. Petitioner explained that he "was

more concerned" with Dickinson because Dickinson was "committing personal harm," and that petitioner was "trying to protect himself." RT 395. Petitioner also testified that he was so afraid that Dickinson was going to hit him that he "ducked over in fear" and put the truck in drive just to get away. RT 392. Thus, petitioner's testimony created a foundation for the defenses of self-defense, accident, and necessity, but did not provide a basis for the defense of property.

After trial, counsel informed the court he would not be requesting an instruction on defense of property, the court added:

> I don't think I am going to give it. That clearly would be an instruction designed to assist the defense, and I don't think that there's any evidence at all that the reason for what was happening here was to protect his truck, although I understand that perhaps the curiosity as to whether that would exist as a defense.
>
> The defendant testified throughout the proceedings, and it appears from all of the evidence I've heard the only reasonable inference would be that if this was some sort of an accident, it was for self-defense. It was motivated by his desire to avoid personal physical harm as opposed to any damage to his somewhat dilapidated truck.

RT 463-64. Similarly, counsel's decision to forego an instruction on defense of property could have been based on the lack of evidence suggesting that petitioner struck Smith while trying to defend his "somewhat dilapidated truck."

Moreover, even if trial counsel performed ineffectively, petitioner failed to show that it resulted in prejudice. Since the jury did not believe that petitioner was justified in using force to defend himself from injury, it is unlikely that the jury would have believed he was justified in using potentially deadly force to defend his property.

On this record, fairminded jurists could certainly disagree that the Superior Court's decision was completely lacking in justification. *See Richter*, 131 S. Ct. at 786. Petitioner is not entitled to habeas relief on this claim.

/////

/////

/////

/////

/////

**D. Determination that 9-1-1 Recording Was Not Admissible**[6]

On January 25, 2010, the People filed a motion in limine to exclude a recording of petitioner's call to 9-1-1 as inadmissible hearsay. CT 45. The People argued that the call was made "two and a half hours after the incident in question, so it cannot be said to fall within any hearsay exception and lacks any indicia of reliability." *Id.* Petitioner contends that counsel performed deficiently by allowing the trial court to determine that the recording was not admissible as a spontaneous statement. ECF No. 1 at 18. The trial court heard argument from the parties as follows:

> THE COURT: . . . I should indicate, however, there is an exhibit that's been marked. It will be Court's Exhibit 1. It was provided to me by the defense, and it is the 911 call made by the defendant. It is a 911 call that I've read the transcript. I've also listened to the tape. I can hear the defendant's demeanor, and I would note that it was made at least several hours, it appears, from what happens in the tape - - several hours after this incident occurred.
>
> [DEFENSE COUNSEL]: Thank you, your Honor. [¶] I would just like to point out that, though Evidence Code [section] 1240[[7]] clearly holds that - - or provides that evidence of a statement is not made inadmissible by the hearsay rule if the statement, A, purports to narrate, describe or explain an act, condition or event perceived by the declarant and, B, was made spontaneously while the declarant was under the stress of excitement caused by such perception, I think it's been established through case law - - and I'm referring to *People v. Smith*, 135 Cal.App.4th, 914 - - that although the statement must be spontaneous, it need not be instantaneous. The lapse of time is merely a relevant factor in determining

[6] It appears from the record that this claim has not been presented to the California Supreme Court and is therefore unexhausted. Generally, a state prisoner must exhaust all available state court remedies, either on direct appeal or through collateral proceedings, before a federal court may consider granting habeas corpus relief. 28 U.S.C. § 2254(b)(1). However, a federal court considering a habeas petition may deny an unexhausted claim on the merits when it is perfectly clear that the claim is not "colorable." *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005). *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"). As discussed herein, this court will deny the claim on the merits, notwithstanding petitioner's failure to exhaust.

[7] California Evidence Code section 1240 provides that "[e]vidence of a statement is not made inadmissible by the hearsay rule if the statement: (a) Purports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and (b) Was made spontaneously while the declarant was under the stress of excitement caused by such perception.

whether the statements were made under the stress of excitement and while the declarant's reflective powers were still in abeyance.

In this case I think it's clear by listening to the tape that Mr. Loesch was still under the stress of the event for which he was describing, as if one reads - - or sorry - - listens to the tape, they can clearly hear that Mr. Loesch is almost sobbing, I believe, while he's talking to the 911 dispatcher, and, therefore, I believe part B would then be satisfied. Part A is satisfied in the sense that he is simply telling the 911 operator, explaining the reason for his call, which was the event he is describing in the tape. [¶] And with that, I'll submit.

THE COURT: People?

[PROSECUTOR]: Ah, yes. [¶] I would note for the record that the crime occurs at 1535 and that the call in to the police from Mr. Loesch occurs at 1831, just four minutes short of three hours later.

(b) of 1240 - - of Evidence Code [section] 1240 states that the call be made spontaneously and while the declarant is under the stress of the excitement caused by such perception. [¶] So three hours later I don't think that it can be concluded that the defendant was excited and under the stress of what he had just witnessed.

He - - I don't hear him cry until the 911 operator tells him the police are on their way to talk to him. What I hear is a very monotone voice throughout the call, and not until the operator says that the police are on their way do I hear any crying from the defendant.

I also think this is actually a type of situation that - - that is the exact - - it is an example of what shouldn't come through because it is three hours later, and the defendant had time to sit and think about how to, basically, create a defense for himself. I think it would also violate *Crawford*, in the sense that the People would not be allowed to cross-examine someone whose hearsay is coming in. And the *Crawford* analysis that has been applied to some 911 calls that fall within 1240 just wouldn't apply in this case because of the lagging time and the fact that he's not calling for aid as some of the cases.

Both *Crawford v. Washington,* 124 Supreme Court, 1354, and *People v. Corella*, 122 Cal.App.4th, 461, very much focus on someone calling in need of help and under the stress of what's just happened. [¶] So I think it's hearsay, and there's no - - there is no applicable exception to allow it in.

* * *

[DEFENSE COUNSEL]: Last I understood *Crawford*, it was for a criminal defendant's Sixth Amendment Right to cross-examine and confront the witnesses against him. I don't think that would apply for the People in this case. [¶] Other than that, I'll submit.

THE COURT: The theory underlying the exception is that the defendant's lack of opportunity - - or the declarant's, rather, lack of opportunity for reflection in the absence of sufficient time for deliberation and fabrication supply adequate assurance of the statement's trustworthiness. *People versus Poggi* sets forth the criteria, and some of the circumstances actually do exist in this case, but he's got one problem, and it's a rather significant and controlling problem: There must be some occurrence startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting. The term unreflecting causes him some problems.

Certainly, the incident itself of being involved in the accident and somebody being struck would fall under what would characterize as a spontaneous or sufficiently startling situation to cause someone to have a spontaneous declaration, but the manner in which this one was delivered was not necessarily unreflecting. There's three hours that passed.

Two, the utterance must have been there - - rather, the utterance must have been before there had been time to contrive and misrepresent. In other words, while the nervous excitement made be supposed still to dominate and the reflective powers to be yet in abeyance. - - [¶] And that's where the real problem is, is there is - - I have listened to the tape. I would not characterize this all as almost sobbing. For the most part, he is very monotone. I actually had the impression more, rather than sobbing, was intoxicated, is what came to my mind. And maybe that's - - maybe he just has a tone that is that fashion, which is very deliberate and plodding, but I got very little of the - - what you've described as sobbing.

There was a portion right when he was giving his phone number is my recollection, where he appeared that maybe there was something that sounded like sobbing for a second, but he immediately regained control for himself and managed to say the phone number without a hint of it again. [¶] And so I don't know how to describe the demeanor exactly, but sobbing is far from the way I would describe it.

But the bigger problem is, throughout the entire conversation with the 911 officer, it was apparent, whether it's true or not, everything that he said was indicating that he didn't do anything wrong.

* * *

But he indicates initially that he didn't do anything wrong that the only reason any of this happened is people were attacking him and they were beating up his truck, that the only reason this happened is he was trying on get away from the people that were attacking him. He indicates several times he was scared. He just wanted to get out of there. It was an accident. He didn't want any problems. In fact, at page 3 at the very bottom portion, it was written as unintelligible, but in listening to the transcripts what he actually says, I believe, is, "I don't feel I did anything wrong. I was just trying," and then he's interrupted by the law enforcement officer.

> The entire statement is self-serving. There is no question. And whether it's accurate or not I don't think there's any way to tell, and I'm certainly not inclined under a 1240 exception to allow an unchallenged version in front of the jury which is a rendition of events from your client taken three hours later, which is self-serving and indicative of a self-defense claim of some sort.
>
> It's exactly why cross-examination exists, to determine the accuracy or truthfulness of this type of a statement, and it fails under item number two of the analysis set forth in *People versus Poggi*, and that's 45 Cal.3d at 306.
>
> The final item, number 3, is the utterance must relate to the circumstances of the occurrence, and there's no question this utterance does. It talks about his version of this event, but it fails under item number 2 and in part under item number 3, which requires unreflected.
>
> So the request to play the 911 tape or offer it without subjecting your client to cross-examination under a 1240 exception is denied.

RT 12-18.

Petitioner faults trial counsel for allowing the trial court to determine that the 9-1-1 recording did not qualify as a spontaneous statement. But trial counsel timely sought admission of the recording as a spontaneous statement pursuant to Evidence Code section 1240, properly identified the requirements for admissibility as a spontaneous statement, and argued that the recording satisfied those requirements. Petitioner does not suggest that trial counsel should have made additional or different arguments, or otherwise demonstrate that counsel could or should have done more. Because petitioner fails to show that trial counsel performed deficiently or that the result of the proceeding would have been different, he is not entitled to federal habeas relief on this claim.

**E. Determination that Prior Conviction Was A Strike Under California Law**[8]

Petitioner contends that trial counsel performed deficiently by failing to object to the trial court's use of a statement contained in the probation report to establish that petitioner's Oregon

/////

[8] It appears from the record that this claim also has not been presented to the California Supreme Court and is therefore unexhausted. As discussed herein, this court will deny the claim on the merits, notwithstanding petitioner's failure to exhaust.

conviction qualified as a strike under California law.[9] ECF No. 1 at 19-20, 56-73 (Ex. J), 100-101 (Ex. AB). He further denies having made the statement contained within the probation report that he "fired a 40 caliber glock handgun in the direction of a vehicle occupied by two victims." *Id.* at 19; *see also* CT at 163.

Petitioner's claim is based on the faulty premise that the trial court relied on a statement in the probation report to determine that the prior conviction qualified as a strike under California law. While the probation report was made part of the record, there is no indication that the trial court relied on it (or any statements contained therein), in counting the Oregon conviction as a strike. In finding that the Oregon conviction qualified as a strike, the trial court referred to the "documentation [he had] reviewed," and noted that petitioner had entered pleas of guilty in the Superior Court of the State of Oregon to the charges of firing a handgun at the occupied vehicle of Michael Eugene Johnson and Eric Alan Dwyer. RT 538-539. The trial court also noted that the conviction was for attempted assault in the first degree, and was entered on September 9, 1992. *Id.* The facts recited by the trial court come from a copy of the certified conviction that had been submitted by the prosecution. *See* Clerk's Supplemental Transcript on Appeal (CST) at 13-20 (copy of certified conviction, including the indictment, which stated that petitioner committed the offenses "by firing the handgun at . . . Michael Eugene Johnson [and Eric Allan Dwyer] contrary to the statutes in such cases made and provided, and against the peace and

---

[9] In the Superior Court of California, County of Sacramento, petitioner raised a similar claim, though it was related to *appellate* counsel's conduct. Resp't's Lodg. Doc. 5 at 4 (Ground 2). The Superior Court rejected the claim on the merits as follows:

> Petitioner contends that the trial court violated his Fifth Amendment right by considering a statement made at a probation hearing to determine that the prior conviction qualified as a strike. There is no evidence attached to the petition that the trial court considered such evidence. Instead, the opinion on appeal found that the record of the conviction itself proved that it qualified as a conviction because the indictment and conviction established that Petitioner committed attempted assault in the first degree and personally used a handgun. As the Court of Appeal found that the trial court properly determined that the Oregon prior conviction qualified as a strike, Petitioner has not shown that appellate counsel was ineffective.

Resp't's Lodg. Doc. 6 at 29-30.

dignity of the State of Oregon"). Because the trial court did not rely on petitioner's statement contained in the probation report, there was nothing improper for counsel to object to. Thus, petitioner has not demonstrated ineffective assistance of counsel requiring federal habeas relief.

**V. Conclusion**

For the foregoing reasons, IT IS HEREBY ORDERED that petitioner's application for a writ of habeas corpus is denied and the court will not issue a certificate of appealability. The Clerk is directed to close the case.

DATED: May 5, 2015.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE